Reed, J.,
delivered the opinion of the court.
Prior to making the arrangement under discussion, appellee attempted to buy the property, making an offer of $1000, which was refused. Failing to purchase, and wishing to secure it, appellee by its officers, commenced negotiations to obtain it, which finally resulted in the conveyance and the contract. Appellant received $100 and the agreement, and conveyed his land.
It is stated in the complaint that appellant was a'laboring man of foreign birth, with very limited business knowledge and education. The truth of this allegation is established by the transaction, and the acceptance of the contract with only a penalty of $500.
It .is alleged in the complaint that the property conveyed was worth $7,000. Upon the trial, officers of appellee and witnesses in its behalf fixed the value variously, from $6,000 to $10,000. In regard to the conversations and inducements held out to appellant by officers of appellee, in order to secure the property, there is some slight conflict of testimony; but in all important particulars, witnesses substantially agree. Appellant was informed by Mr. Sprague, an officer of appellee, that streets were to be laid out and graded, water *299 .works put in, an hotel to cost $75,000 to be built upon the land. Appellant still hesitating, Sprague asks him to see Mr. Dow, the president, and said, “ that whatever Dow said I could depend upon, that he had the money to make the improvements,” etc. Mr. Dow was seen, and so far corroborated Sprague as to induce him to make the arrangement. It at once becomes apparent, that the inducement for the conveyance of nine-tenths of the property was the agreement to expend a large sum of money then on hand, in the improvement of the property conveyed; and the consideration, the enhanced value of the other one-tenth by reason of such expenditure of money in improvements. Such is the unavoidable conclusion from all the testimony in the case— the circumstances and condition of the parties. It is evident that appellant relied upon the honor, ability and integrity of the officers with whom he dealt, and their assurance of funds on hand to make the contemplated improvements, and intention to do it. Otherwise, he would have no consideration whatever, except the $100 received. Appellee failed to realize upon the enterprise, the “ boom ” collapsed, and no matter how honorable its intentions were, was unable to comply with the contract entered into, upon technical interpretation of which it now attempts to escape, and make appellant the victim. It is alleged that it had expended $600 or $700 in surveying and platting a portion of the property into lots. At that point it stopped, and required appellant to proceed to a division of the lots surveyed. The parties met and the following is the uncontradicted testimony of appellant in regard to what occurred at the interview.
“ Saw Dow next evening. He wanted to know why I had not divided the lots. I told him that they had not fulfilled their contract. He said they had not agreed to make the improvements before division. I told him I had not agreed to divide the lots until improvements were made. He said ‘ they were going ahead to sell the lots, they had a deed to the property and were not going to make any more improvements, and all I could collect was the $500; that they were *300 under no obligation to grade the streets then.’ And this is corroborated by the defense interposed. In the answer it is said, ‘ Defendant stands ready to and will grade said streets when needed.'"
The defense is not such as to appeal to a chancellor, a falling back and reliance upon the contract as far as appellant is concerned, while evading and avoiding its express stipulations and the evident intention and understanding of the parties. When the stipulations of a contract are relied upon, the party insisting must show full, complete and technical compliance with all important requirements. The obligations assumed by the appellee in the contract are as follows : “ Now therefore, if said company shall survey, grade and improve the streets on said lands, make other valuable improvements thereon, and commence within thirty days of the date hereof to survey into lots, and plat said lands, or so much thereof as said company may deem practicable, and deed to said Boyes one tenth of said lots so platted, to be divided as follows, to wit: ”
It first covenants to survey, grade and improve the streets. Second, “make other valuable improvements thereon,” then follows in-regard to surveying and platting of lots, and their division between the parties.
It being conceded, or apparent, that the enhanced value of the one tenth by reason of the contemplated improvements and the expenditure of money upon the property was the sole consideration for the conveyance of the nine tenths, the failure to perform worked an absolute failure of consideration. The agreements on the part of the appellee must be regarded as conditions precedent to its right to enforce the contract against appellant. The setting of stakes and a plat upon paper left the land in its natural state, as far as marketable value was concerned. The entire tract as owned by appellant before the conveyance was in the same situation it was when he was required to take one tenth in consideration. The avowal of the appellee of a willingness and intention to lay out and grade streets when they should be needed, *301 is of no value; it was to precede. It is an attempted evasion, an attempted reversal of the natural order. The laying out and grading of streets was necessary to the habitation of the lots. Occupants could not be expected to enter upon the land and compel the opening of streets.
The other valuable improvements covenanted to be made had not been made or entered upon, nor had any survey or plat of the lots been made as agreed. The contract was to survey and plat the lands conveyed. The testimony shows appellee to have owned lands adjoining the land in question on two sides, and that in the survey the lots crossed the lines, a fractional part of the lot being on each tract. This was clearly a violation of the contract, rendering the division provided for impossible. Appellant was not required to divide lots or take compensation from lands, other than that conveyed by him. Appellee by its answer sets up the contract and insists upon specific performance on the part of appellant. The acts to be performed by appellee being conditions precedent, and not having been performed is not legallyin a position to enforce the contract against the other party. “ When a contract rests upon a condition precedent, until the performance of the condition, it cannot be enforced, because until that time there is no true contract. * * * The fact that a contract depends upon a condition precedent, which has not been performed, is always a complete defense to a suit for its specific enforcement.” Pom. on Spec. Performance, § 334; Regents Canal Co. v. Ware, 23 Beav. 586; Laning v. Cole, 3 Green’s Chy. (N. J.) 229; Rilly v. Barnard, 8 Gill & John (Md.) 170; Jones v. Roberts, 6 Call (Va.) 187.
Appellee having failed to comply with its covenants and agreements, and relying upon the penalty of $500, and the letter of the contract as against appellant, he was justified in regarding the contract at an end. No court of equity could or would compel him to take one tenth of the property he conveymd, in the same condition as when he conveyed, as a consideration for the whole. The rescission or cancellation of contracts or deeds and specific performance are not matters *302 of absolute right, but are matters of sound discretion in a court of equity, to be granted or refused, according to its own ideas of what is reasonable and right. 1 Story Eq. Jur. §§ 206, 692 & 693; Mortlock v. Butler, 10 Ves. Jr. 293.
In Torrance v. Batton L. R., 8 Chy. Ap., 118, it is laid down “ That there is no general rule that actual fraud is necessary even in sales of land if the contract or enforcement of it is, in the opinion of the court, unconscientious, equity will rescind to it.” Graham v. Johnson, L. R., 8 Eq. Cas. 36; Jones v. Bolles, 9 Wal. 364; Glastenbury v. McDonald, 44 Vt. 450; Wilson v. Getty, 67 Pa. St., 266; Martin v. Graves, 5 Allen, (Mass.) 601.
The court will take jurisdiction and decree deeds, leases or contracts to be cancelled, “ when enforcing instruments or agreements would be inequitable or unjust.” Baker v. Mink, 4 De G. J. & S., 388; Wright v. Vanderplank, 8 De G. M. & G., 133: Hyer v. Little, 20 N. J. Eq., 443; Allose v. Jewell, 4 Otto, 506; Reid v. Burns, 13 Ohio St. 49.
But in this case it is unnecessary to rely upon the equitable power and jurisdiction of the court to cancel and set aside the contract as inequitable and unjust. A failure to perform on the part of appellee was so far a repudiation of the contract as to warrant appellant in regarding it as rescinded, and he had his election either to sue at law for the breach for damages — treating the conveyance as valid, or, as in this case, to bring suit to cancel the conveyance and recover his land.
In 2 Pars. on Con., 679, it is stated, “ Generally, where one fails to perform his part of the contract, or disables himself from performing it, the other party may treat the contract as rescinded.” See Keys v. Harwood, 2 C. B. 905; Blanche v. Colburn, 8 Bing. 14; Shaw v. Turnpike Co., 2 Penn. St. 454; Goodrich v. Safflin, 1 Pick., 57; Hill v. Green, 4 Pick. 114.
Before entering into the final contract, appellee offered $1,000 for the property, which was declined. Upon the trial, officers and witnesses of appellee fixed the value of the prop *303 erty at from $6,000 to $10,000, and appellee had paid but $100. To allow appellee, after failure to perform its covenants to give the property value, to retain the property, by falling back upon the $500 penalty, thus keeping the property for $600, would be clearly unjust and inequitable.
The district court erred in dismissing the suit, in effect holding appellant to specific performance. The decree will be reversed and cause remanded.

Reversed.